Matthias, J.
This case is in this court because of the question of the authority of the court of appeals to reverse a judgment as excessive, being induced by passion and prejudice, in a case where a previous judgment had been reversed on the ground that it was against the weight of the evidence. The question is raised, however, as to any liability on the part of the railroad company for the injury complained of.
The evidence disclosed by the record is ample to make a case of actionable negligence against Norris, the foreman, who was handling the rifle when it was discharged and caused the injury to Waldron, but it is contended that the facts do not warrant a recov *374 ery against the railroad company for the reason that the rifle was not furnished to Norris the foreman by the company, nor was the procurement and use thereof by him within the scope of either his express or implied authority, or within the scope of his employment as foreman,. The only evidence having reference to express authority is in the negative, and the trial court so informed the jury and submitted to it the question of the implied authority of the foreman to have and use a gun in and about the performance of his duties. In so doing the court instructed the jury as follows: “Now when could the acts of a section boss be within the scope of his authority? The plaintiff claims that it was the duty of this section boss to keep the defendant’s tracks in repair; and that woodchucks were undermining it, and that in order to keep it in repair and to protect the property of the defendant company, the section boss caused a rifle to be procured for his use in order to shoot these woodchucks to prevent the destruction of that part of the road, about and along the section of which he had charge; and that while he was not actually using the gun at the time in question in shooting such woodchucks, that he was at that time using it in connection with his employer’s business * * *. Upon that principle the law is this: Even though the section boss had no express authority to use that gun, if in procuring it he was carrying out and performing his duty as section boss and furthering the master’s business, and at the very time of the shooting he was still engaged as section boss, exercising control over his men and furthering the business of the company, and the alleged negligent act, if it was a negligent act, was *375 committed by such section boss in furthering such business, and was an incident of his efforts to further such business, and for the protection of the property of the defendant, and to accomplish better what his duties were there as section boss, then you will be justified in finding that he was acting within the scope of his authority as such section boss.”
If this instruction be a correct statement of the law, the trial court was warranted in submitting the cause to the jury, and a verdict and judgment in favor of Waldron and against the railroad company in a sum such as to fairly compensate him for the injury suffered should be sustained.
The rule relative to implied authority, and dealing particularly with the test to be applied to determine whether authority may be implied under the circumstances of the case from the nature of the business entrusted to the charge of the servant, was stated in the case of Little Miami Rd. Co. v. Wetmore, 19 Ohio St., 110, frequently referred to as the hatchet case, where the court said, at page 132: ■‘That the servant is invested with authority to use the necessary means to the performance of the duties assigned him; and that the- character of the means that may be used will vary according to the nature of the duty to be performed and the attending circumstances.” It was held there was no liability in that case, because the assault made by the servant in no way was calculated to facilitate or promote the business for which the servant was employed, and the act of the agent was foreign to the objects of the employment.
*376 The duties of Norris, as disclosed by the record, were those of foreman of the “section gang,” consisting of six men. The portion of the track of which he had charge extended about five miles, and Norris supervised the care of the tracks and right of way in that section under the direction of the track supervisor, who was his superior; but Norris had immediate control and power to direct the members of the “section gang” in the work required of them. The record discloses that Norris, as foreman, procured the rifle to shoot woodchucks, because of the fact that they had been making holes and undermining the tracks, which necessitated repeated filling, and it was apparently because of the condition caused by the woodchucks that Norris desired to exterminate them.
It is stated, as a general rule, in 6 Labatt’s Master & Servant (2 ed.), Section 2277: “It is well settled that if the act complained of was incidental to the discharge of the functions covered by the servant’s general authority, the master cannot avoid liability on any of the following grounds: That he did not specifically authorize the commission of that particular act; that he had no knowledge of it; or that it involved an abuse or excess of the authority conferred by him.”
The rule applicable is concisely stated by Mechem on Agency (1 ed.), Section 732: “The question of authority to do or not to do the particular act complained of, is not the criterion by which the liability of the principal is to be determined. If the agent be acting in the execution of his general authority to act, i. e., in the scope of his employment, it is enough. Liability for what is done in accomplishing the object, follows as a result of the relation.”
*377 It is uniformly held that the important inquiry is not whether the agent was authorized to do the particular act complained of. Presumably a principal never authorizes his agent to do a negligent act or a malicious act, and yet the principal is liable if his agent injures another while acting in the course of his employment and within the scope of his authority. It is stated in 31 Cyc., page 1585, that “the act of an agent is within the course of his employment when the agent in performing it is endeavoring to promote his prineipaPs business within the scope of the actual or apparent authority conferred upon him for that purpose.”
Applying these tests it must be concluded that the trial court was warranted in submitting the case to the jury under the instruction to which we have referred.
The further question presented is whether the court of appeals is authorized to reverse a judgment on the ground that the verdict is excessive, appearing to have been given under the influence, of passion and prejudice, in a case in which a previous judgment had been reversed upon the ground that it was against the weight of the evidence.
The distinction between the provision of subdivision four and subdivision six of Section 11576, General Code, is pointed out in the case of Schendel v. Bradford, Admr., post 387, this day decided, and much that is said in the opinion in that case is applicable here. These provisions had been in existence long prior to the enactment of Section 11577, General Code, which precludes the granting of more than one new trial on the weight of the evidence by the same court. The terms “weight of evidence” and “sufficient evidence” have long been regarded *378 as synonymous' terms and used interchangeably (Brittain et al. v. Industrial Commission, 95 Ohio St., 391), and the inhibitory provisions of Section 11577, General Code, obviously had reference to subdivision six and to no other subdivision of Section 11576, General Code.
To find that a verdict is excessive undoubtedly requires a consideration of the evidence, and a weighing of the evidence, but it requires something more than that; before a judgment may be reversed under authority of subdivision four the court of appeals must not only find that the verdict was excessive, but also that it was influenced by passion and prejudice. Under the holding of all authorities on the subject, such finding serves to vitiate the entire verdict, and requires it to be set aside, and the fact that one verdict had been reversed because it was thus vitiated would not serve to render a subsequent verdict free from the same fault. Hence that fact is immaterial where as here a court of appeals had set aside a judgment previously rendered in the same case upon the ground that it was excessive, having been induced by passion and prejudice. Whenever the record justifies such finding, and it is made by the court of appeals, its clear duty, under the ’ provisions of subdivision four of Section 11576, General Code, is to reverse the judgment and remand the case for a new trial. If Section 11577, General Code, had any application to subdivision four, then the court would be powerless to disturb a verdict where there had been one reversal upon the ground that the verdict was against the weight of the evidence, no matter how clearly it might appear from the record that passion and prejudice, *379 from whatever cause, had influenced the action of the jury and moved it to return a verdict clearly excessive.
The judgment of the court of appeals must therefore be affirmed.

Judgment■ affirmed.

Marshall, C. J., Hough, Robinson and Jones, JJ., concur.
Wanamaker, J., dissents.